1

2

3

4

5

6

7

8               UNITED STATES DISTRICT COURT

9           FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   KAREN MELINDA BIELSKI,                No.  2:24-cv-1877 WBS AC

12              Plaintiff,

13        v.                               FINDINGS AND RECOMMENDATIONS
                                           REGARDING MOTIONS FOR SUMMARY
14   COMMISSIONER OF SOCIAL                JUDGMENT
     SECURITY,
15
               Defendant.
16

17

18        Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security

19   ("Commissioner"), denying her application for Supplemental Security Income ("SSI") under

20   Title XVI of the Social Security Act ("the Act"), 42 U.S.C. §§ 1381-1383f.[1]  For the reasons that

21   follow, the court recommends that plaintiff's motion for summary judgment be GRANTED, and

22   defendant's cross-motion for summary judgment be DENIED.

23                         I.  PROCEDURAL BACKGROUND

24        Plaintiff applied for SSI on March 22, 2022, alleging disability as of March 1, 2022.  AR

25

26   _____
     [1]  SSI is paid to financially needy disabled persons.  42 U.S.C. § 1382(a); Washington State Dept.
27   of Social and Health Services v. Guardianship Estate of Keffeler, 537 U.S. 371, 375 (2003)
     ("Title XVI of the Act, § 1381 et seq., is the Supplemental Security Income (SSI) scheme of
28   benefits for aged, blind, or disabled individuals, including children, whose income and assets fall
     below specified levels . . .").

                                        1

23.[2]  The application was disapproved initially on October 12, 2022 and after reconsideration on

March 2, 2023.  Id.  On February 6, 2024, ALJ Carol Eckersen presided over the telephonic

hearing on plaintiff's challenge to the disapprovals.  AR 40-75 (transcript).  Plaintiff, who

appeared with Joseph Fraulob as counsel, was present at the hearing.  AR 23, 40.  David Dettmer,

a Vocational Expert ("VE"), also testified.  AR 23, 67.

On March 6, 2024, the ALJ found plaintiff "not disabled" as of plaintiff's March 22, 2022

application date under section 1614(a)(3)(A) of Title XVI of the Act, 42 U.S.C. § 1382c(a)(3)(A).

AR 23-34 (decision), 34-39 (exhibit list).  On May 8, 2024, after receiving Exhibit 20B, a

Request for Review dated April 1, 2024, as an additional exhibit, the Appeals Council denied

plaintiff's request for review, leaving the ALJ's decision as the final decision of the

Commissioner of Social Security.  AR 7-11 (decision and additional exhibit list).

Plaintiff filed this action on July 8, 2024.  ECF No. 1; see 42 U.S.C. § 1383c(3).  After the

parties declined the jurisdiction of the magistrate judge, the case was assigned to U.S. District

Judge William Shubb.  ECF Nos. 8-9.  The parties' cross-motions for summary judgment, based

on the Administrative Record filed by the Commissioner, have been fully briefed.  ECF Nos. 13

(plaintiff's summary judgment motion), 17 (defendant's cross-motion), 18 (plaintiff's reply brief).

## II.  FACTUAL BACKGROUND

Plaintiff was born on July 4, 1971, and was accordingly, at age 50, an individual closely

approaching advanced age under the regulations on the date of her SSI application.  AR 32; see

20 C.F.R. §§ 404.1563(d), 416.963(d).  Plaintiff has an eleventh-grade education and can read

and write simple messages in English.  AR 268.  After working as a janitor from July 2014 to

February 2016, she worked in "Sample Display" and special-event positions at Winco from April

to August 2016, Steams Inc. from February 2015 to February 2017, and Wal-Mart from March

2018 to March 2019.  AR 268.  Reported medical conditions include low back, sciatic pain,

gastrointestinal problems, anxiety, and depression.  AR 268.

////

////

_____

[2]  Two copies of the AR are electronically filed, collectively as ECF No. 10 (AR 1 to AR 1492).

III.  LEGAL STANDARDS

The Commissioner's decision that a claimant is not disabled will be upheld "if it is supported by substantial evidence and if the Commissioner applied the correct legal standards." Howard ex rel. Wolff v. Barnhart, 341 F.3d 1006, 1011 (9th Cir. 2003).  "'The findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive . . ..'" Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995) (quoting 42 U.S.C. § 405(g)).

Substantial evidence is "more than a mere scintilla," but "may be less than a preponderance." Molina v. Astrue, 674 F.3d 1104, 1110-11 (9th Cir. 2012).  "It means such evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (internal quotation marks omitted).  "While inferences from the record can constitute substantial evidence, only those 'reasonably drawn from the record' will suffice." Widmark v. Barnhart, 454 F.3d 1063, 1066 (9th Cir. 2006) (citation omitted). Although this court cannot substitute its discretion for that of the Commissioner, the court nonetheless must review the record as a whole, "weighing both the evidence that supports and the evidence that detracts from the [Commissioner's] conclusion." Desrosiers v. Secretary of HHS, 846 F.2d 573, 576 (9th Cir. 1988); Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985) ("The court must consider both evidence that supports and evidence that detracts from the ALJ's conclusion; it may not affirm simply by isolating a specific quantum of supporting evidence.").

"The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001).  "Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002).  However, the court may review only the reasons stated by the ALJ in his decision "and may not affirm the ALJ on a ground upon which he did not rely." Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007); Connett v. Barnhart, 340 F.3d 871, 874 (9th Cir. 2003) ("It was error for the district court to affirm the ALJ's credibility decision based on evidence that the ALJ did not discuss").

The court will not reverse the Commissioner's decision if it is based on harmless error,

1    which exists only when it is "clear from the record that an ALJ's error was 'inconsequential to the

2    ultimate nondisability determination.'" <u>Robbins v. Soc. Sec. Admin.</u>, 466 F.3d 880, 885 (9th Cir.

3    2006) (quoting <u>Stout v. Commissioner</u>, 454 F.3d 1050, 1055 (9th Cir. 2006)); <u>see also</u> <u>Burch v.</u>

4    <u>Barnhart</u>, 400 F.3d 676, 679 (9th Cir. 2005).

5                                   IV.  RELEVANT LAW

6            SSI is available for every eligible individual who is "disabled."  42 U.S.C. § 1381a.

7    Plaintiff is "disabled" if she is "'unable to engage in substantial gainful activity due to a

8    medically determinable physical or mental impairment . . ..'"  <u>Bowen v. Yuckert</u>, 482 U.S. 137,

9    140 (1987) (quoting identically worded provisions of 42 U.S.C. §§ 423(d)(1)(A),

10   1382c(a)(3)(A)).

11           The Commissioner uses a five-step sequential evaluation process to determine whether an

12   applicant is disabled and entitled to benefits.  20 C.F.R. § 416.920(a)(4); <u>Barnhart v. Thomas</u>, 540

13   U.S. 20, 24-25 (2003) (setting forth the "five-step sequential evaluation process to determine

14   disability" under Title II and Title XVI).  The following summarizes the sequential evaluation:

15
16           Step one: Is the claimant engaging in substantial gainful activity?  If
             so, the claimant is not disabled.  If not, proceed to step two.

17   20 C.F.R. § 404.1520(a)(4)(i), (b).

18           Step two: Does the claimant have a "severe" impairment?  If so,
             proceed to step three.  If not, the claimant is not disabled.

19   <u>Id.</u> §§ 404.1520(a)(4)(ii), (c).

20           Step three: Does the claimant's impairment or combination of
21           impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404,
             Subpt. P, App. 1?  If so, the claimant is disabled.  If not, proceed to
22           step four.

23   <u>Id.</u> §§ 404.1520(a)(4)(iii), (d).

24           Step four: Does the claimant's residual functional capacity [RFC]
             make him capable of performing his past work?  If so, the claimant
25           is not disabled.  If not, proceed to step five.

26   <u>Id.</u> §§ 404.1520(a)(4)(iv), (e), (f).

27           Step five: Does the claimant have the residual functional capacity
             perform any other work?  If so, the claimant is not disabled.  If not,
28           the claimant is disabled.

                                        4

Id. §§ 404.1520(a)(4)(v), (g).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process. 20 C.F.R. §§ 404.1512(a) ("In general, you have to prove to us that you are blind or disabled"), 416.912(a) (same); Bowen, 482 U.S. at 146 n.5. However, "[a]t the fifth step of the sequential analysis, the burden shifts to the Commissioner to demonstrate that the claimant is not disabled and can engage in work that exists in significant numbers in the national economy." Hill v. Astrue, 698 F.3d 1153, 1161 (9th Cir. 2012); Bowen, 482 U.S. at 146 n.5.

## V.  THE ALJ's DECISION

The ALJ made the following findings:

> 1. The claimant has not engaged in substantial gainful activity since March 22, 2022, the application date (20 CFR 416.971 *et seq*.).

> 2. The claimant has the following severe impairments: lumbar arthropathies, bilateral upper extremity osteoarthritis, depression, and anxiety (20 CFR 416.920(c)).

> 3. The claimant does not have an impairment or combination of impairments that meet or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 ["Appendix 1"] (20 CFR 416.920(d), 416.925 and 416.926).

> 4. After careful consideration of the entire record, [ALJ found] that the claimant has the residual functional capacity [RFC] to perform light work as defined in 20 CFR 416.967(b) except she can occasionally climb ramps, stairs, and ladders and occasionally crawl. She has no limits on balancing. She can frequently stoop, kneel and crouch.  She cannot climb ropes or scaffolds. She can frequently handle and finger with the bilateral upper extremities.  She […] can understand, remember, carry out and sustain concentration, persistence and pace and adapt for simple tasks.  She can occasionally interact with the public and frequently interact with coworkers and supervisors.  She can adapt to change consistent with the demands of simple routine tasks.

> 5. The claimant has no past relevant work (20 CFR 416.965).

> 6. The claimant was born on July 4, 1971 and was 50 years old, which is defined as an individual closely approaching advanced age, on the date the application was filed (20 CFR 416.963).

> 7. The claimant has a limited education (20 CFR 416.964).

> 8. Transferability of job skills is not an issue because the claimant does not have past relevant work (20 CFR 416.968).

> 9. Considering the claimant's age, education, work experience, and

residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 416.969 and 416.969a).

10. The claimant has not been under a disability, as defined in the Social Security Act, since March 22, 2022, the date the application was filed (20 CFR 416.920(g)).

AR 25-33.

As noted, the ALJ concluded that plaintiff was "not disabled" under Title XVI of the Act. AR 33-34.

## VI.  ANALYSIS

### A.  <u>The ALJ Did Not Commit Reversible Error at Step Two</u>

In step two, the ALJ held that plaintiff's severe impairments include lumbar arthropathies, bilateral upper extremity osteoarthritis, depression, and anxiety.  AR 25.  The ALJ determined that based on the record, plaintiff's purported "severe gastroesophageal reflux disease (GERD) and chronic kidney stones" were not severe because they did not create a significant limitation in basic work activities for at least 12 continuous months.  AR 25.  The ALJ noted that even non-severe impairments would affect assessment of plaintiff's RFC.  AR 25.

Plaintiff argues that the ALJ failed to analyze the severity of her somatic symptom disorder, social anxiety disorder, panic disorder, and PTSD.  ECF No. 13 at 19.  Defendant argues that because the ALJ found for plaintiff in this step and did not limit subsequent analysis to the impairments in this step, any error in this step could not be harmful to her.  ECF No. 17 at 14 (citing <u>Buck v. Berryhill</u>, 869 F.3d 1040, 1048-49 (9th Cir. 2017); <u>Molina v. Astrue</u>, 674 F.3d 1104, 1115 (9th Cir. 2012)).

The court agrees.  Step two is "merely a threshold determination" in which the finding of any severe impairment requires the disability analysis to continue; both severe and nonsevere impairments are then considered when determining the RFC.  <u>Buck</u>, 869 F.3d at 1048-49.  Accordingly, when step two is decided in plaintiff's favor, any alleged error is harmless.  <u>Id.</u> at 1049 (citing <u>Molina</u>, 674 F.3d at 1115).  That is the case here.  Plaintiff's arguments about the ALJ's failure to consider all psychiatric impairments in formulating the RFC will be addressed regarding steps four and five.

1          B.  <u>The ALJ Failed to Properly Evaluate Dr. Harmon's Opinion</u>

2              1.  <u>The Medical Opinion</u>

3          On July 31, 2022, Dr. Matthew Harmon conducted an Independent Medical Examination.

4    AR 640.  He noted that plaintiff had pain and weakness in the upper extremities, along with

5    anxiety that had recently caused her doctor to increase her medication dosage.  AR 640.  Plaintiff

6    reportedly would not want to do what she needed to do on a given day, including leaving the

7    house to go shopping or otherwise be around people, and would sit in her car for 20-30 minutes

8    once arriving at the store.  AR 640.  Her anxiety worsens when loud noise or large groups are

9    present, and she felt like she could no longer control such thoughts.  AR 640.

10         During the physical examination, Dr. Harmon did not identify any issues with the skin,

11   neck, chest, cardiovascular system, abdomen, or lower extremities.  AR 642.  He did observe

12   "mild thenar compartment wasting on right hand."  AR 642.  As to plaintiff's musculoskeletal

13   functioning, Dr. Harmon observed no discernible discomfort within the normal range of motion

14   for cervical, dorsolumbar, hip, knee, ankle, shoulder, elbow, or finger joints.  AR 643.  He did not

15   observe discernible discomfort within the normal range of motion for the wrists, but he did find

16   "negative carpal compression and tineels[.]"  AR 643.

17         Dr. Harmon diagnosed plaintiff with "bilateral Right > left possible carpal tunnel, vs.

18   cervical radiculopathy" along with anxiety and depression.  AR 644.  He did not recommend any

19   limitations on how long she should sit, stand, or walk during an eight-hour workday, at most

20   advising that she use a cane for longer distances or uneven terrain.  AR 644.  He did, however,

21   advise she limit her "[b]ending, stooping, squatting, crouching, and/or crawling activities" due to

22   chronic pain and discomfort.  AR 644.  He also found that "[m]anipulative activities, such as

23   reaching, pushing, pulling, handling, grasping, fingering, and/or feeling should be feasible

24   occasionally."  AR 644.

25         The ALJ found Dr. Harmon's recommended limitations too restrictive.  AR 31.  She

26   stated that during Dr. Harmon's physical examination, plaintiff had only "<u>mild</u> thenar

27   compartment wasting of the right hand[.]"  AR 31 (citing AR 642) (emphasis original).  As to

28   coordination, Dr. Harmon also observed that "Romberg was negative" and "Finger-nose was

accurate on both sides." AR 31, 643. Plaintiff walked symmetrically from heel to toe and

exhibited normal muscle tone and strength in all extremities, including grip and two-point pinch.

AR 31 (citing AR 643). The ALJ acknowledged plaintiff's "antalgic and slowed" gait, but noted

this was without an assistive device. AR 31 (citing AR 643). Neurologically, Dr. Harmon

observed plaintiff had "Babinksi plantar bilaterally" and "2/4" bilateral patellae deep tendon

reflexes, but adequate dexterity, bilateral strength, and sensitivity to soft touch. AR 31, 643.

The ALJ limited plaintiff to a "reduced range of light exertion" given her anxiety,

depression, cervical radiculopathy, and carpal tunnel in the right wrist. AR 31. However, she

rejected Dr. Harmon's recommendations limiting plaintiff to only "occasional" postural and

manipulative activities and requiring her to use a cane or other assistive device when walking

long distances or on uneven terrain. AR 31. The ALJ found these limitations both inconsistent

with the larger medical record and unsupported by Dr. Harmon's own observations during the

examination. AR 31.

## 2. Governing Legal Principles

In evaluating medical opinion evidence, ALJs give no specific evidentiary weight to any

particular type of opinion or source, but instead must consider and evaluate the persuasiveness of

all medical opinions or prior administrative medical findings from medical sources and evaluate

their persuasiveness. Revisions to Rules, 2017 WL 168819, 82 Fed. Reg. 5844, at 5867-68; see

20 C.F.R. § 404.1520c(a) and (b). The factors for evaluating the persuasiveness of a physician

opinion include supportability, consistency, relationship with the claimant (including length of the

treatment, frequency of examinations, purpose of the treatment, extent of the treatment, and the

existence of an examination), specialization, and "other factors that tend to support or contradict a

medical opinion or prior administrative medical finding" (including, but not limited to, "evidence

showing a medical source has familiarity with the other evidence in the claim or an understanding

of our disability program's policies and evidentiary requirements"). 20 C.F.R. § 404.1520c(c)(1)-

(5). Supportability and consistency are the most important factors, and therefore the ALJ is

required to explain how both factors were considered. 20 C.F.R. § 404.1520c(b)(2).

////

1    Supportability and consistency are defined in the regulations as follows:

2       Supportability. The more relevant the objective medical evidence
        and supporting explanations presented by a medical source are to
3       support his or her medical opinion(s) or prior administrative medical
        finding(s), the more persuasive the medical opinions or prior
4       administrative medical finding(s) will be.
        Consistency. The more consistent a medical opinion(s) or prior
5       administrative medical finding(s) is with the evidence from other
        medical sources and nonmedical sources in the claim, the more
6       persuasive the medical opinion(s) or prior administrative medical
        finding(s) will be.
7

8    20 C.F.R. § 404.1520c(c)(1)-(2).

9         The ALJ may, but is not required to, explain how the other factors were considered.  20

10   C.F.R. § 404.1520c(b)(2).  The Ninth Circuit has confirmed that the new regulatory framework

11   eliminates the "treating physician rule" and displaces the longstanding case law requiring an ALJ

12   to provide "specific and legitimate" or "clear and convincing" reasons for rejecting a treating or

13   examining doctor's opinion.  Woods v. Kijakazi, 32 F.4th 785 (9th Cir. 2022).  Still, in rejecting

14   any medical opinion as unsupported or inconsistent, an ALJ must provide an explanation

15   supported by substantial evidence.  Id.  In sum, the ALJ "must 'articulate ... how persuasive' [he

16   or she] finds 'all of the medical opinions' from each doctor or other source ... and 'explain how

17   [he or she] considered the supportability and consistency factors' in reaching these findings."  Id.

18   (citing 20 C.F.R. §§ 404.1520c(b), 404.1520(b)(2)).

19         3.   The ALJ Did Not Adequately Discuss Consistency

20        Plaintiff argues that contrary to the ALJ's decision, plaintiff's extensive history of chronic

21   lower back pain, including emergency room visits, supports Dr. Harmon's restrictions on

22   bending, stooping, squatting, and crawling.  ECF No. 13 at 23.  She also argues that documented

23   arthritis and deformities in her hands and wrists, as well as difficulty grabbing objects and

24   working with her hands, support Dr. Harmon's recommended restrictions on physical

25   manipulation.  Id. at 24 (citing AR 664, 1416, 1441, 1482-83).

26        The court need not undertake its own comparison of Dr. Harmon's opinion with other

27   evidence in the medical record, because the ALJ failed to identify which evidence contradicted

28   Dr. Harmon's opinion.  Because a reviewing court "cannot substitute [its] conclusions for the

9

1   ALJ's, or speculate as to the grounds" of such conclusions, "the ALJ must provide some

2   reasoning in order for us to meaningfully determine whether the ALJ's conclusions were

3   supported by substantial evidence."  Treichler v. Comm'r of Soc. Sec. Admin, 775 F.3d 1090,

4   1103 (9th Cir. 2014); see also Brian O. v. O'Malley, Case No.: 22cv1652-LR, 2024 WL 1333891

5   at *7, 2024 U.S. Dist. LEXIS 56971 at *18-19 (S.D. Cal. Mar. 28, 2024) (applying Treichler's

6   standard of review to the rejection of a medical opinion).

7        In finding Dr. Harmon's opinion too restrictive, the ALJ merely asserts that postural

8   limitations are "inconsistent with the objective medical record," without identifying any portions

9   of the record.  AR 31.  Defendant contends that the ALJ must have contrasted Dr. Harmon's

10  opinion with negative imaging results and plaintiff's positive response to nonsteroidal anti-

11  inflammatory drugs ("NSAID"), both of which had been mentioned earlier in the ALJ's decision.

12  ECF No. 17 at 17 (citing AR 27-28).  The court rejects the invitation to write into the ALJ's

13  opinion an evidentiary reference that is simply not there.  The ALJ's discussion of consistency is

14  inadequate for judicial review.[3]

15        4.  The Error Was Not Harmless

16        An ALJ error is harmless if it "was inconsequential to the ultimate nondisability

17  determination."  Stout v. Comm'r of Soc. Sec., 454 F.3d 1050, 1055 (9th Cir. 2006).  When, for

18  example, the ALJ fails to "properly discuss competent lay testimony favorable to the claimant,"

19  the error is only harmless when no reasonable ALJ, when fully crediting the testimony, could

20  have reached a different disability determination.  Id. at 1056.  The Ninth Circuit has clarified that

21  the "relevant inquiry…is not whether the ALJ would have made a different decision absent any

22  error…it is whether the ALJ's decision remains legally valid, despite such error."  Carmickle v.

23  Comm'r of Soc. Sec. Admin, 533 F.3d 1155, 1162 (9th Cir. 2008).  Multiple reasons for a

24  _____

25  [3] The court rejects plaintiff's separate contention that the ALJ did not adequately explain her
    negative finding as to supportability.  The ALJ pointed out that Dr. Harmon had limited plaintiff
26  to only occasional postural and manipulative activities, AR 644, while observing on examination
    that she could mostly walk normally without help, exhibited a normal range of motion, and has
27  only minor wasting in one thumb.  AR 31, 642-43.  Supportability and consistency are
    independent considerations, however, and the ALJ is obliged to make a clear record on both
28  matters.

10

1    particular conclusion can render an error in one harmless because the others provide "a basis for

2    the court to review the ALJ's decision[.]"  Id. at 1163; see also Lambert v. Saul, 980 F.3d 1266,

3    1278 (9th Cir. 2020) (refusing to find an error harmless when "the ALJ did not provide enough

4    'reasoning in order for us to meaningfully determine whether the ALJ's conclusions were

5    supported by substantial evidence[.]'") (internal citations omitted).

6        As discussed above, the ALJ must separately explain how she considered supportability

7    and consistency when determining whether a particular medical opinion was persuasive.  See

8    infra: 20 C.F.R. § 404.1520c(b)(2).  That the ALJ failed to adequately discuss consistency renders

9    the assessment of Dr. Harmon's opinion incomplete.  The error was not harmless, especially in

10   light of the other errors identified below.

11            5.  Dr. Harmon's Opinion Did Not Compel a Finding of Disability

12       Plaintiff argues in conclusory fashion that Dr. Harmon's finding that Ms. Bielski could lift

13   10 pounds frequently and 15 pounds occasionally (AR 644) was implicitly adopted by the ALJ

14   but is inconsistent with the finding that plaintiff has the RFC to perform light-level work.  ECF

15   No. 13 at 25.  According to plaintiff, Dr. Harmon's weight limitation requires an RFC of

16   sedentary work, which given plaintiff's age, education and lack of relevant work would compel a

17   finding of disability under the Medical-Vocational Guidelines ("GRIDS").  Id.

18       Plaintiff misreads the definitions of light and sedentary work.  Light work is defined as

19   work that "involves lifting no more than 20 pounds at a time with frequent lifting or carrying of

20   objects weighing up to 10 pounds."  20 C.F.R. 416.967(b).  Sedentary work, in contrast,

21   "involves lifting no more than 10 pounds at a time and occasionally lifting or carrying" small

22   articles.  20 C.F.R. 416.967(a).  Plaintiff need not be capable of carrying 20 pounds to perform

23   light work; carrying more than that constitutes medium work.  See 20 C.F.R. 416.967(c).  That

24   plaintiff can carry more than 10 pounds, even occasionally, demonstrates that she can perform

25   more than sedentary work.  There was no error on this point by the ALJ.

26   ////

27   ////

28   ////

11

1    C. <u>The ALJ Erred in Discounting Plaintiff's Testimony Regarding Pain and Physical</u>

2       <u>Dysfunction</u>

3    1. <u>Plaintiff's Testimony Regarding Subjective Symptoms</u>

4        At the hearing, plaintiff testified to daily substantial pain throughout her spine since 2022,

5    from neck to lower back.  AR 52-53.  She rated this pain as a consistent 8.5 out of 10.  AR 53.

6    She treats this pain with heating pads and two 800-gram dosages of Motrin per day, which

7    reduces the pain to about a 6 or 7 out of 10.  AR 54.  The back pain keeps plaintiff from walking

8    more than 20 or 50 feet at a time before she needs to stand still for about 5-10 minutes.  AR 58.

9    Plaintiff also can only stand for 5-10 minutes before the pain in her lower back prompts her to sit

10   down.  AR 65-66.

11       Plaintiff can work through the pain if necessary but prefers to lie down when it occurs.

12   AR 54-55.  Plaintiff can take care of her own hygiene and household chores like cooking and

13   mopping, but with difficulty.  AR 55, 58.  When cooking a burger, for example, she can barely

14   grip the spatula with one hand while the other holds the plate onto which she wants to transfer the

15   burgers.  AR 55-56.  She consequently often drops the burger onto the counter.  AR 55.  She can

16   only wash dishes for five to ten minutes at a time, by keeping them as low in the sink as possible,

17   before taking a five-minute break to sit down.  AR 64.  Meanwhile, the pain from conventional

18   mopping has prompted her to use slippers with mops on the bottom soles instead.  AR 59.

19   Plaintiff also struggles to zipper her jacket and can only lift up to five pounds.  AR 56-57.

20       Plaintiff does go grocery shopping by herself once a month, but usually needs an

21   associate's help to lift "heavy" items like a 40-pack of water or 12-pack of soda.  AR 57.  Her

22   trips only take 20 minutes, yet she sometimes needs to stop and rest while in the store.  AR 58.

23   Upon arriving home, her son must help her bring the groceries inside the house.  AR 58.

24       As to mental impairment, plaintiff testified that she has difficulty going into crowded

25   places and easily gets irritated or angry.  AR 60.  She usually does not say or do anything to let

26   anyone know about her irritation.  AR 60-61.  At times, however, the idea of having to deal with

27   that frustration has led plaintiff to sit in a busy grocery parking lot before deciding not to go

28   inside.  AR 61.  Aside from grocery shopping, plaintiff does not attend any busy venues or events.

1    AR 61-62.  Every other day, without any known cause, she does not want to leave the house or

2    deal with people from the moment she wakes up.  AR 62.  She will talk to her daughter and

3    grandson if they call her on the phone or a few neighbors, but otherwise just watch movies or

4    listen to music.  AR 63.

5         Plaintiff admitted when asked that she also has anxiety attacks when at home.  AR 65.

6    Various thoughts would "go[] around over and over in [her] head" until a panic attack left her

7    paralyzed and scared.  AR 65.

8         The ALJ noted in the decision that the record showed plaintiff could perform various

9    household chores.  AR 30 (citing AR 309-14, 640-44).  In her function report, plaintiff also said

10   that despite some trouble due to lack of focus, she follows written and spoken instructions well

11   and can get along with authority figures.  AR 30 (citing AR 314).  The ALJ found that these

12   activities undercut plaintiff's claim that she was not capable of substantial gainful activity.  AR

13   30.  Plaintiff could "perform focused and sustained activities similar to the capacity required to

14   perform many jobs."  AR 30.

15        The ALJ further found that the medical record indicated prescription medication and

16   counseling helped manage the mental health symptoms identified in plaintiff's testimony.  AR 30.

17   On April 28, 2022, for example, plaintiff reported that medication had decreased her anxiety

18   without any negative side effects, allowing her to sleep through the night and have more energy

19   during the day.  AR 30 (citing AR 615).  On September 1, 2022, she similarly reported that over-

20   the-counter medication had reduced the symptoms of her lower back pain.  AR 30 (citing AR

21   657).

22        2.  Governing Legal Principles

23        In the Ninth Circuit, evaluating a claimant's testimony as to pain is a two-step process.

24   First, the claimant must provide "objective medical evidence of an underlying impairment 'which

25   could reasonably be expected to produce the pain or other symptoms alleged.'"  Garrison v.

26   Colvin, 759 F.3d 995, 1014 (9th Cir. 2014) (quoting Lingenfelter v. Astrue, 504 F.3d 1028,

27   1035–36 (9th Cir. 2007) (quoting Bunnell v. Sullivan, 947 F.2d 341, 344 (9th Cir.1991))).  The

28   claimant need not, however, provide evidence that the impairment would result in the same

13

degree of pain or other symptom as what the claimant alleges. Garrison, 759 F.3d at 1014.

Second, if the claimant succeeds in providing objective evidence of the impairment and "there is no evidence of malingering," the ALJ cannot reject the claimant's testimony about the severity of such symptoms unless there is "'specific, clear and convincing reasons for doing so.'" Id. at 1014-15 (quoting Smolen v. Chater, 80 F.3d 1273, 1281 (9th Cir. 1996)). The clear and convincing standard is "not an easy requirement to meet" and is in fact the most demanding standard in such cases. Garrison, 759 F.3d at 1015.

While an ALJ's credibility finding must be properly supported and sufficiently specific to ensure a reviewing court the ALJ did not "arbitrarily discredit" a claimant's subjective statements, an ALJ is also not "required to believe every allegation" of disability. Fair v. Bowen, 885 F.2d 597, 603 (9th Cir. 1989); Smartt v. Kijakazi, 53 F.4th 489, 499 (9th Cir. 2022).[4] Although an ALJ cannot reject complaints of pain solely due to "a lack of medical evidence to *fully corroborate* the alleged severity of pain[,]" it need not adopt such testimony when it contradicts "objective medical evidence in the record[.]" Id. at 498-99 (quoting Burch, 400 F.3d at 680). Evaluating the "intensity and persistence" of the symptoms of an impairment will involve considering all available evidence, including "medical history, the medical signs and laboratory findings, and statements about how…symptoms affect" the plaintiff. 20 C.F.R. § 404.1529(a). Relevant factors include:

> (ii) The location, duration, frequency, and intensity of your pain or other symptoms; […]
>
> (iv) The type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate your pain or other symptoms;
>
> (v) Treatment, other than medication, you receive or have received for relief of your pain or other symptoms; [and]
>
> (vi) Any measures you use or have used to relieve your pain or other

---

[4] In this regard, so long as substantial evidence supports an ALJ's credibility finding, a court "may not engage in second-guessing." Thomas v. Barnhart, 278 F.3d 947, 958 (9th Cir. 2002). Defendant argues that the clear and convincing standard in Garrison conflicts with this "substantial evidence" standard, as articulated in 42 U.S.C. § 405(g). ECF No. 17 at 19, n.5; 759 F.3d at 1015. Defendant conflates the evidentiary burden the ALJ must meet in its decision with the standard of review that courts must apply when analyzing such decisions.

symptoms (e.g., lying flat on your back, standing for 15 to 20 minutes every hour, sleeping on a board, etc.);

20 C.F.R. § 404.1529(c).  As to the fourth and fifth factors, the Ninth Circuit has held that an ALJ can consider "unexplained, or inadequately explained, failure to seek treatment or follow a prescribed course of treatment." Bunnell v. Sullivan, 947 F.2d 341, 346 (9th Cir. 1991) (quoting Fair, 885 F.2d at 603); see also Plummer v. Berryhill, Case No. 2:16-cv-00753-AC, 2017 U.S. Dist. LEXIS 108184 at *16-17, 2017 WL 2972461 at *6 (E.D. Cal. July 12, 2017) (agreeing with the ALJ that "failure to pursue recommended treatment discredited…[plaintiff's] subjective testimony.").

3.    The ALJ's Assessment of Plaintiff's Daily Activities is Not Supported by Substantial Evidence

An ALJ may not penalize claimants "for attempting to lead normal lives in the face of their limitations." Reddick v. Chater, 157 F.3d 715, 722 (9th Cir. 1998).  She may, however, consider a plaintiff's "participation in everyday activities indicating capacities that are transferable to a work setting[.]" Molina v. Astrue, 674 F.3d 1104, 1113 (9th Cir. 2012).  This includes when the reported activities reflect "some difficulty functioning" but still "contradict claims of a totally debilitating impairment." Id.

Plaintiff challenges the ALJ's finding that her daily activities are inconsistent with the alleged disability. ECF No. 13 at 27.  She notes that while she can cook, she has testified that food goes everywhere because her wrist impairments prevent her from fully gripping her utensils. Id. (citing AR 55-56).  The record shows that she takes an hour to wash dishes, 2.5 hours to clean her bathroom, and 3-4 hours to go shopping. ECF No. 13 at 27 (citing AR 311-12).  The record also shows that she has difficulty completing tasks. Id. (citing AR 314-25).  Meanwhile, she testified that she has a hard time mopping, sweeping, zippering cloths up, washing dishes without breaks every ten minutes, and picking up heavy items while at the store. Id. at 27-28 (citing AR 56-58, 64).

The court rejects defendant's argument that plaintiff's subjective symptom testimony was undermined by the fact that she could perform such tasks at all.  As a general rule, findings that

15

1  discredit subjective testimony must "'convincingly justify [the ALJ's] rejection' of the claimant's

2  excess pain testimony." Fair, 885 F.2d at 602 (citations omitted). Findings "sufficiently specific

3  to discredit pain testimony" include that "a claimant is able to spend a substantial part of [her] day

4  engaged in pursuits involving the performance of physical functions that *are* transferable to a

5  work setting[.]" Id. at 603 (emphasis in original). In this case, the record is devoid of evidence

6  that the activities of daily living identified by the ALJ were performed in a way or to a degree that

7  reflects capacities that are transferable to a work setting.

8      The ALJ failed to consider the degree of difficulty plaintiff faces in conducting the cited

9  activities. Plaintiff's function report clearly states that while she can wash dishes and clean her

10  bathroom every day, it takes her 1 hour and 2.5 hours respectively. AR 311. The meals that she

11  reported preparing were a combination of cereal, fast food, and microwaveable meals. AR 311.

12  Preparing these simple meals takes two hours each, not including the days where she does not feel

13  like cooking at all. AR 311. Although plaintiff listed "mall, gym, [and] hanging out with

14  friends" as hobbies she enjoys, she also said she rarely can do these things because of the crowds

15  and her anxiety. AR 313. These reports are consistent with plaintiff's testimony at the hearing,

16  which indicated that whatever daily activities she can perform are performed at a drastically

17  slower pace than that of any person engaging in substantial gainful activity.

18      The other source cited in the ALJ's decision, plaintiff's statements to Dr. Harmon, do not

19  provide additional support. AR 640-41. In that context plaintiff again asserted that she does not

20  like being around others, to the point where she takes 20-30 minutes to get out of the car when

21  shopping. AR 640. She again alleged that her anxiety keeps her from going anywhere, especially

22  anywhere with loud noises or large groups of people. AR 640. As to activities of daily living,

23  although she did say she was able to get in and out of bed and to drive, cook, and clean for

24  herself, she did not say how long those activities took. AR 641. Those statements therefore do

25  not contradict her assertion that these activities take her too long to demonstrate a capacity for

26  substantial gainful activity.

27      The evidence as a whole shows that plaintiff can barely complete the tasks needed to

28  sustain herself. In finding that these tasks reflect skills that are transferable to substantial gainful

1    activity, the ALJ impermissibly implied that plaintiff needed to "'vegetate in a dark room'" in

2    order to be disabled.  See Molina, 674 F.3d at 1112.  Plaintiff's activities of daily living do not

3    discredit her subjective testimony.

4         4.   The ALJ Overstated Plaintiff's Response to Treatment

5         As to plaintiff's back pain and anxiety, the ALJ cites evidence of decreasing symptoms

6    due to medication and treatment.  AR 30 (citing AR 615-16, 657).  Plaintiff argues that in neither

7    case was the ALJ's finding supported by clear and convincing evidence, given the broader

8    treatment history of each condition.  ECF No. 13 at 29-32.  Defendant responds that in both cases,

9    plaintiff's symptoms showed a history of improvement.  ECF No. 17 at 20-21.  Defendant asserts

10   that the only time in which plaintiff's mental state did not improve was when she was homeless

11   and experiencing stressors.  Id. at 21 (citing AR 1468).

12        a.   Physical Limitations

13        On March 29, 2022, Dr. Melody Sillo observed "left upper quadrant tenderness" in both

14   plaintiff's abdomen and her back.  AR 444.  Dr. Sillo reasoned that the pain was likely

15   musculoskeletal, in part because NSAIDs had improved the pain.  AR 443.  She advised plaintiff

16   to take ibuprofen as needed for no more than two weeks.  AR 443.  Dr. Sillo repeated this

17   assessment on April 5 and told plaintiff to seek emergency treatment if symptoms worsened.  AR

18   439-40.

19        On April 18, 2022, plaintiff reported that her pain was still constant and would peak at a 7

20   on a ten-point scale.  AR 437-38.  Dr. Sillo advised plaintiff to sleep on a regular mattress.  AR

21   437.

22        On September 1, 2022, plaintiff reported to Dr. Ammar that her lower back pain had

23   decreased due to the over-the-counter medication.  AR 657.  Dr. Ammar advised her to continue

24   her current course of treatment.  AR 657.

25        On September 13, 2022, plaintiff visited Dr. Michael Madatovian for "low back pain after

26   cleaning bathroom today."  AR 766.  Specifically, "excessively cleaning" that day had required

27   her to bend over and resulted in pain, even after taking 800 milligrams of ibuprofen.  AR 766.

28   Dr. Madatovian diagnosed the pain as "unspecified" and found plaintiff's condition had

                                    17

1    "Improved[.]"  AR 768-69.  He advised plaintiff that it was just a "flareup episode of your

2    chronic back pain" and she should continue to take the prescribed over-the-counter medication

3    and attend physical therapy.  AR 769.

4         On October 7, 2022, plaintiff visited Dr. Charina Garduque based on complaints of low

5    back pain.  AR 1218.  She alleged it had increased in the past two years and was currently an

6    "8/10[.]"  AR 1218.  Plaintiff was taking Motrin and agreed to try 200 milligrams of Gabapentin

7    instead.  AR 1218-19.

8         On November 4, 2022, plaintiff reported that her pain was still a 9 out of 10, and that the

9    Gabapentin was not sufficiently managing her pain.  AR 1213.  Dr. Charina Garduque and Dr.

10   Mark Heinrich advised plaintiff that they would start administering Butrans patches, with a dose

11   of 5 micrograms per hour, for better pain control.  AR 1213-14.

12        This overall treatment history supports a different conclusion than the record of plaintiff's

13   September 1, 2022 visit alone.  Although she reported a decrease in her overall level of back pain,

14   this is a relative term when she had previously rated her pain as a 7 out of 10.  Compare AR 657

15   with AR 437-38.  Plaintiff then visited another physician after aggravating her back pain through

16   housework, notwithstanding that physician's opinion that her condition had overall improved.

17   AR 766, 768-69.  This pain did not decrease across two subsequent visits, during both of which

18   plaintiff rated her pain as at least 8/10 and Dr. Garduque changed her prescription.  AR 1213-14,

19   1218-19.  This history suggests that plaintiff's response to treatment is variable at best, and that

20   her pain is not adequately controlled.

21        Plaintiff's testimony that her back pain is constantly 8.5 out of 10 without medication, and

22   at least 6 out of 10 with Motrin, (AR 53-54), is consistent with the record and the ALJ erred in

23   finding otherwise.

24        b.  Mental Limitations

25        Because "[c]ycles of improvement and debilitating symptoms are a common occurrence"

26   for a mental disability, the ALJ cannot reject a plaintiff's testimony merely due to this waxing and

27   waning.  Garrison, 759 F.3d at 1017.  When a person "suffers from severe panic attacks, anxiety,

28   and depression[,]" for example, improvement does not necessarily mean that that the mental

1    disability no longer affects the plaintiff's ability to function in the workplace.  Id. (citing Holohan

2    v. Massanari, 246 F.3d 1195, 1205 (9th Cir. 2001)).  Symptoms must be interpreted in the context

3    of the patient's overall well-being, with the understanding that symptoms that would prevent

4    someone from functioning in the workplace may not manifest "while being treated and while

5    limiting environmental stressors[.]"  Garrison, 759 F.3d at 1017.  This degree of caution is

6    especially merited when no medical expert has opined based on review of the full record that

7    plaintiff can return to work.  Id.

8         The ALJ's summary of improvements documented during a single appointment on April

9    28, 2022 constitutes an inadequate review of plaintiff's mental symptoms.  See AR 30, 615-16.

10   This visit is the last cited record of any examination related to anxiety or other mental

11   impairment.  See AR 27-28.  The ALJ therefore failed to show that any improvement observed

12   during this visit was more than temporary.  Defendant attempts to bolster the ALJ's opinion by

13   citing medical evidence from late 2022 and throughout 2023.  See ECF No. 17 at 10-11.  This

14   cannot compensate for the ALJ's failure to review such evidence herself before discrediting

15   plaintiff's testimony as to her anxiety.

16        D.   The ALJ Erred in Assessment of Plaintiff's RFC

17        In assessing plaintiff's RFC at Step Four, the ALJ limited her to light work with additional

18   restrictions as follows.  Plaintiff could frequently stoop, kneel, crouch, and handle and finger

19   items.  The ALJ placed no limits on balancing.  She did, however, find that plaintiff could only

20   "occasionally" crawl or climb ramps, stairs, and ladders.  Plaintiff also categorically could not

21   climb ropes of scaffolds.  As to mental capacity, plaintiff could understand, remember, and carry

22   out simple tasks while sustaining the concentration, persistence, and pace they require.  She also

23   could adapt to the types of changes such simple routine tasks may entail.  As to social interaction,

24   the ALJ found plaintiff could interact occasionally with the public and frequently with coworkers

25   and supervisors.  AR 27.

26        When constructing an RFC based on a plaintiff's testimony and medical opinions, an ALJ

27   is not required to incorporate evidence from sources whose opinion the ALJ has properly

28   discounted.  See Batson v. Comm'r of Soc. Sec., 359 F.3d 1190, 1197 (9th Cir. 2004).  When

                                        19

1   reviewing the ALJ's determination as to the RFC, the court will uphold the determination if in

2   accordance with the proper legal standard and supported by substantial evidence.  See Bayliss v.

3   Barnhart, 427 F.3d 1211, 1217 (9th Cir. 2005).  Where the evidence is susceptible to more than

4   one rational interpretation, it is the ALJ's conclusion that must be upheld.  See Morgan v.

5   Comm'r of Soc. Sec., 169 F.3d 595, 599 (9th Cir. 1999) (citing Andrews v. Shalala, 53 F.3d

6   1035, 1041 (9th Cir. 1995)).

7          The court has already found that the ALJ erred in evaluating plaintiff's subjective

8   testimony and Dr. Harmon's opinion.  See supra VI.B-C.  Because reconsideration of the RFC

9   will be necessary on remand, the court addresses other alleged errors affecting that assessment.

10          1.  The RFC Did Not Sufficiently Account for Dr. Whitten's Opinion

11          On February 1, 2023, Dr. Keith Whitten performed a psychiatric evaluation of plaintiff.

12   AR 1271.  Plaintiff's chief complaint at the time was that "I have severe anxiety and depression

13   and my mind doesn't focus."  AR 1271.  Dr. Whitten found that while plaintiff "was alert and

14   oriented" and had a "mostly intact" memory, her concentration was "poor to fair."  AR 1273-74.

15   He also found that she had "moderately impaired" insight and judgment.  AR 1274.

16          Dr. Whitten concluded that because of her impairments, plaintiff could not manage her

17   own funds, was "mildly impaired" in her ability to perform simple and repetitive tasks, and was

18   moderately impaired for detailed and complex tasks.  AR 1274.  She also was mildly to

19   moderately impaired in her ability to accept and understand instructions from supervisors.  AR

20   1274.  Her anxiety and panic attacks left her ability to interact with coworkers and the public

21   moderately impaired, while her depression and lack of energy had a similar effect on her ability to

22   consistently perform work activities.  AR 1274.  Based on plaintiff's lack of motivation to do

23   things around the house, Dr. Whitten also concluded her ability to maintain regular attendance at

24   work and complete a normal workday or workweek was also moderately impaired.  AR 1275.

25   Taken together, these findings suggested plaintiff's overall ability to manage normal workplace

26   stress was moderately impaired.  AR 1275.

27          The ALJ found Dr. Whitten's opinion generally persuasive insofar as it suggested "at least

28   moderate impairment in the ability to perform work reliably and consistently."  AR 31.  The

1    decision acknowledged that Dr. Whitten found plaintiff incapable of managing her own funds.

2    AR 32.  Dr. Whitten had opined that plaintiff "had mild impairment in performing simple and

3    repetitive tasks but overall had at least moderate impairment in performing work reliably and

4    consistently[.]"  AR 32.  The ALJ concluded her review of Dr. Whitten's opinion by noting that

5    the objective medical record included some signs of improvement through medication and

6    counseling.  AR 32 (citing AR 615).

7        Plaintiff argues that finding Dr. Whitten's opinion generally persuasive is inconsistent

8    with the RFC's failure to reflect a moderate inability to work reliably and consistently.  ECF No.

9    13 at 34.  Specifically, plaintiff argues the RFC does not reflect Dr. Whitten's level of limitation

10   in her ability to interact with coworkers and the public, consistently perform work activities

11   without special supervision, maintain regular attendance and complete a normal workday or

12   workweek without psychiatric interruption, and manage the usual workplace stress.  Id.

13       The ALJ bears the responsibility of "translating and incorporating clinical findings into a

14   succinct RFC."  Rounds v. Comm'r of Soc. Sec. Admin., 807 F.3d 996, 1006 (9th Cir. 2015)

15   (citing Stubbs-Danielson v. Astrue, 539 F.3d 1169, 1174 (9th Cir. 2008)).  An RFC finding need

16   not directly correspond to a specific medical opinion.  Chapo v. Astrue, 682 F.3d 1285, 1288

17   (10th Cir. 2012).  The ALJ may incorporate the opinions of a physician by assessing RFC

18   limitations entirely consistent with, but not identical to, limitations assessed by the physician.  See

19   Turner v. Comm'r of Soc. Sec. Admin., 613 F.3d 1217, 1222-23 (9th Cir. 2010).

20       Defendant contends that the RFC's limitation to simple and routine tasks sufficiently

21   addresses the moderate limitations identified by Dr. Whitten, but the court is unpersuaded.  That

22   limitation may adequately address some deficits identified by both Dr. Whitten and Dr. Tyl,[5] but

23   it does not account for plaintiff's impaired ability to maintain regular attendance and complete a

24   normal workday or workweek without psychiatric interruption.

25   _____

[5] Defendant argues that the RFC's limitations reflect those in prior administrative medical
26   findings that the ALJ also credited.  ECF No. 17 at 27.  Specifically, the ALJ credited Dr. R.A.
     Tyl's assessment that plaintiff should be limited to "simple, 1-2 step tasks in environment with
27   limited need for change/adaptation and limited contact with others."  AR 30, 96.  That the RFC
     reflects one persuasive opinion does not explain why it fails to reflect another, except to the
28   extent that the two conflict.

21

1       2. <u>The ALJ Adequately Considered Evidence of Somatic Symptom Disorder, Social</u>

2                <u>Anxiety Disorder, Panic Disorder, and PTSD</u>

3       Plaintiff contends that the RFC does not reflects symptoms from her somatic symptom

4 disorder, social anxiety disorder, panic disorder, or PTSD. <u>See supra</u> VI.A; ECF No. 13 at 34.

5 Plaintiff cites to various medical records that show her suffering from the symptoms of these

6 impairments. ECF No. 13 at 20-22. Dr. Whitten diagnosed plaintiff with all four disorders, and

7 the ALJ found that opinion generally persuasive. ECF No. 17 at 29 (citing AR 1274-75). The

8 functional limitations found by Dr. Whitten were informed by the combined symptoms and

9 effects of plaintiff's mental health impairments taken together, and the ALJ's consideration of Dr.

10 Whitten's opinion has already been addressed.

11       The court finds no additional error in the ALJ's failure to discuss each of plaintiff's

12 psychiatric diagnoses separately, in detail and by name, when the decision otherwise reflects their

13 influence. Neither of the cases plaintiff cites in her opening brief suggest such a standard. Unlike

14 the cases on which plaintiff relies,[6] here the ALJ's summary of the medical record reflects several

15 of the symptoms that plaintiff alleges were not considered. Plaintiff describes "racing thoughts

16 that she cannot control[,]" like the "excessive unrealistic worry" the ALJ cited from a March

17 2021 counseling session. <u>Compare</u> ECF No. 13 at 21 (citing AR 368, 376, 585, 640, 966, 1272,

18 1472) <u>with</u> AR 28. Plaintiff alleges "intense mistrust and helplessness due to past trauma[,]"

19 which the ALJ also noted from an April 2022 visit to New Day Family Counseling. <u>Compare</u>

20 ECF No. 13 at 21 (citing AR 1265) <u>with</u> AR 28. Plaintiff cites thoughts of suicide, and the ALJ

---

21   [6] In <u>Hill v. Astrue</u>, plaintiff was diagnosed with panic disorder and described several of its

22 symptoms when testifying before the ALJ. 698 F.3d 1153, 1161 (9th Cir. 2012). This included instances of increased fear or anxiety accompanied by "heart palpitations, rapid breathing or

23 shortness of breath, blurred vision, dizziness, and racing thoughts." <u>Id.</u> (citation omitted). When the ALJ excluded the panic disorder diagnosis, he also limited panic attacks to only attacks that

24 result in the victim collapsing to the ground. <u>Id.</u> The failure to consider the full range of symptoms rendered the RFC incomplete. <u>Id.</u> Similarly, in <u>Mandrell v. Kijakazi</u> the ALJ

25 acknowledged that the plaintiff suffered from PTSD. 25 F.4th 514, 518 (7th Cir. 2022). He then,

26 however, "dismissed most of the symptoms that accompanied that condition[,]" including a racing heart, sleep disturbances, a fear of being around others, and difficulty interacting with

27 others. <u>Id.</u> The failure to consider the symptoms, more so than the diagnosis, is why the RFC did not "adequately capture[] what [plaintiff] could—and more to the point, could not—do in light of

28 her severe PTSD and other psychological conditions." <u>Id.</u>

1   highlighted triage records from June 2021 assessing passive suicidal ideation.   Compare ECF No.

2   13 at 21 (citing AR 369, 377, 1408, 1469) with AR 28.   Accordingly, the court finds that the ALJ

3   adequately considered the symptoms of plaintiff's somatic symptom disorder, social anxiety

4   disorder, panic disorder, and PTSD.   The failure to discuss these disorders in detail and by name

5   does not invalidate the RFC.

6          3.   The ALJ Need Not Integrate Step Three Analysis into the RFC

7          When the ALJ considered whether plaintiff's impairments met the severity of impairments

8   in Appendix I, she acknowledged some of plaintiff's impairments were "severe."  AR 25-26.

9   Citing Dr. Whitten's opinion, the ALJ found that plaintiff had "moderate limitation" in interacting

10  with others, including "moderate impairment in interacting with coworkers and the public[.]"  AR

11  26.  Similarly, the ALJ concluded that Dr. Whitten's opinion reflected moderate limitations in the

12  plaintiff's ability to adapt and manage herself.  AR 26.  The ALJ also held plaintiff had "moderate

13  limitation" as to concentrating, persisting, or maintaining pace, based both on Dr. Whitten's

14  opinion and various statements in the record as to "racing thoughts and difficulty focusing."  AR

15  26.  The ALJ cautioned that any limitations identified in relation to Appendix I criteria were not

16  an RFC assessment, which "requires a more detailed assessment of the areas of mental

17  functioning."  AR 26-27.

18         Appendix I rates the severity of mental disorders based on various areas of functioning

19  outlined in Paragraph B of the relevant section.  20 C.F.R. Part 404, Subpt. P., App. 1 §§ 12.00

20  (B), (E).  One is the ability to interact with others, including supervisors, co-workers, and the

21  public.  Id. at § 12.00 (E)(2).  Another, the ability to "[c]oncentrate, persist, or maintain pace[,]"

22  refers to whether a claimant can focus on work activities and stay on task at a sustained rate.  Id.

23  at § 12.00 (E)(3).  The last is the ability to "[a]dapt or manage oneself," or to regulate behavior

24  and well-being in a work setting.  Id. at § 12.00 (E)(3).  Appendix I defines a limitation in any of

25  these areas as "moderate" if the claimant's "ability to function in this area independently,

26  appropriately, effectively, and on a sustained basis is fair."  20 C.F.R. Part 404, Subpt. P., App. 1

27  § 12.00 (F)(2)(c).

28         Plaintiff argues that the despite acknowledging moderate limitations in her step three

                                            23

1   analysis, the ALJ fails to incorporate them into the RFC.  ECF No. 13 at 35.  To the extent that

2   the ALJ reached this holding based on Dr. Whitten's opinion, the court has already recommended

3   remand for the ALJ revisit how to incorporate the persuasive findings from this opinion into the

4   RFC.  See supra VI.D.1.  The court therefore need not revisit whether under Stubbs-Danielson,

5   supra, an RFC for simple work adequately accommodates moderate limitations in areas including

6   concentration, persistence, or pace.  See ECF Nos. 17 at 24-25, 18 at 24-26.

7       Plaintiff's argument also presupposes that the analyses undergone in steps three and four

8   are equivalent.  As defendant notes, the analysis of an impairment's severity under "Paragraph B"

9   is only relevant to steps two and three of the five-step analysis.  ECF No. 17 at 23 (citing SSR 96-

10  8p).  The RFC analysis conducted for steps four and five is more thorough, and therefore more

11  nuanced.  SSR 96-8p.  Upon such further review, "moderate" limitations in broad areas of

12  functioning can translate to a less limited RFC.

13      The Tenth Circuit has addressed this issue in Vigil v. Colvin, in which the ALJ had

14  similarly found moderate difficulties in the plaintiff's concentration, persistence, and pace.  805

15  F.3d 1199, 1203 (10th Cir. 2015).  The plaintiff in Virgil argued the ALJ should have included

16  this limitation in the RFC instead of just using it to limit plaintiff "to work with an SVP one or

17  two."  Id.  The Tenth Circuit held that finding this limitation in step three did not necessarily

18  translate to a "work-related functional limitation" in step four.  Id.  The ALJ's more

19  comprehensive analysis at this stage confirmed that plaintiff had "some problems with

20  concentration, persistence, and pace" that would prevent him from accomplishing complex tasks.

21  Id.  At the same time, the ALJ also found that the plaintiff's ability to perform simple tasks was

22  normal, suggesting that he had at least adequate memory and concentration for such tasks.  Id. at

23  1203-04.  Limiting the plaintiff to unskilled work therefore adequately captured plaintiff's

24  limitations, despite the step three analysis alone suggesting a more limited RFC.  Id. at 1204.

25      As discussed above, the ALJ has failed to address Dr. Whitten's opinion as to plaintiff's

26  moderate impairments in the RFC.  Upon remand, however, she need not base the RFC on

27  conclusions drawn in step three, even those based on Dr. Whitten's opinion.

28  ////

24

1        E.    The VE's Testimony Was Based on an Invalid Hypothetical

2            For step five, the ALJ twice asked the VE to consider a hypothetical person of the same

3    age, education, and work history as the plaintiff.  AR 68-69.  In the second hypothetical, the ALJ

4    asked the VE to suppose this individual was capable of only light work, could occasionally climb

5    or crawl, had unlimited balance, and could frequently stoop, kneel, or crouch.  AR 69.  This

6    hypothetical person could not climb ropes or scaffolds, but she could frequently handle or finger

7    things with her bilateral upper extremities.  AR 69.  She could also "understand, remember, and

8    carry out and sustain concentration, persistence, and pace for simple, routine tasks."  AR 69.  She

9    could interact occasionally with the public and frequently with coworkers and supervisors.  AR

10   69.  Finally, the hypothetical person could adapt to change consistent with simple, routine tasks.

11   AR 69.

12           The VE testified that such a person could perform some forms or light, unskilled work

13   with a "reasoning level of one or two[.]"  AR 69.  He listed housekeeper, office helper, and

14   photocopy machine operator as three examples from the Dictionary of Occupational Titles.  AR

15   69-70.  The ALJ cited this testimony in her decision when concluding that plaintiff could make

16   the necessary adjustments to perform work that exists in significant numbers in the national

17   economy.  AR 32-33.

18           In determining whether a claimant can do past relevant work based on the current RFC,

19   the Commissioner may both ask the claimant about his past work and use a vocational expert to

20   provide necessary evidence.  20 C.F.R. §404.1560(b)(2).  The vocational expert "may offer

21   relevant evidence within his or her expertise or knowledge concerning the physical and mental

22   demands of a claimant's past relevant work, either as the claimant actually performed it or as

23   generally performed in the national economy."  Id.  If a vocational expert's hypothetical does not

24   reflect all the claimant's limitations, however, then the "expert's testimony has no evidentiary

25   value to support a finding that the claimant can perform jobs in the national economy."  Matthews

26   v. Shalala, 10 F.3d 678, 681 (9th Cir. 1993) (citing DeLorme v. Sullivan, 924 F.2d 841, 850 (9th

27   Cir. 1991)).

28            As discussed above, the ALJ failed to credit plaintiff's subjective testimony, adequately

1    discuss whether Dr. Harmon's opinion was consistent with the record, and to incorporate Dr.

2    Whitten's limitations even after finding his opinion persuasive.  See supra VI.B-D.  Because these

3    errors affect the RFC, any VE testimony based on the current RFC has no evidentiary value.  The

4    ALJ therefore erred in using this testimony to find against plaintiff in step five of the analysis.

5         F.  Remand

6         The undersigned agrees with plaintiff that the ALJ's error is harmful and remand for

7    further proceedings by the Commissioner is necessary.  An error is harmful when it has some

8    consequence on the ultimate non-disability determination.  Stout v. Comm'r, Soc. Sec. Admin.,

9    454 F.3d 1050, 1055 (9th Cir. 2006).  The ALJ failed to adequately discuss the consistency of Dr.

10   Harmon's opinion with other sources, sufficiently credit plaintiff's subjective testimony, and

11   incorporate the persuasive portions of Dr. Matten's opinion into the RFC.  These three issues may

12   very well result in a more restrictive residual functional capacity assessment, which has

13   invalidated the VE's testimony and could result in a finding of disability upon review.  The errors

14   were harmful.

15        It is for the ALJ to determine in the first instance whether plaintiff has severe impairments

16   and, ultimately, whether she is disabled under the Act.  See Marsh v. Colvin, 792 F.3d 1170, 1173

17   (9th Cir. 2015) ("the decision on disability rests with the ALJ and the Commissioner of the Social

18   Security Administration in the first instance, not with a district court").  "Remand for further

19   administrative proceedings is appropriate if enhancement of the record would be useful."

20   Benecke v. Barnhart, 379 F.3d 587, 593 (9th Cir. 2004).

21        Plaintiff argues that under the credit-as-true rule, the court should avoid further

22   proceedings and instead remand with instructions for the ALJ to calculate and award benefits.

23   ECF No. 13 at 39 (citing Garrison, 759 F.3d at 1019).  The credit-as-true rule applies if:

24              (1) the record has been fully developed and further administrative
                proceedings would serve no useful purpose; (2) the ALJ has failed to
25              provide legally sufficient reasons for rejecting evidence, whether
                claimant testimony or medical opinion; and (3) if the improperly
26              discredited evidence were credited as true, the ALJ would be
                required to find the claimant disabled on remand.
27

28   Garrison, 759 F.3d at 1020.  The rule does not preclude further proceedings if "an evaluation of

the record as a whole creates serious doubt that a claimant is, in fact, disabled." Id. at 1021.

The court finds that the credit-as-true rule does not apply here, ns that remand is the appropriate

remedy.

VII.  CONCLUSION

For the reasons set forth above, IT IS HEREBY RECOMMENDED that:

1.  Plaintiff's motion for summary judgment (ECF No. 13) be GRANTED;

2.  The Commissioner's cross-motion for summary judgment (ECF No. 17) be DENIED;

3.  This matter be REMANDED to the Commissioner for further consideration consistent with this order; and

4.  The Clerk of the Court enter judgment for the plaintiff and close this case.

These findings and recommendations are submitted to the United States District Judge assigned to this case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen (14) days after being served with these findings and recommendations, either party may file written objections with the court.  Such document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Local Rule 304(d).  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: July 21, 2025

ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE